NOTICE
Decision filed 09/19/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240702-U

NOS. 5-24-0702, 5-24-0703, cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* QUINTON G. and LIAM G., Minors | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Jackson County. |
| | ) | |
| Petitioner-Appellee, | ) | Nos. 21-JA-85, 21-JA-86 |
| | ) | |
| v. | ) | |
| | ) | |
| Quincy G., | ) | Honorable |
| | ) | Ella L. Travelstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: Evidence amply supported the circuit court's findings that respondent was unfit and that the minors' best interests required terminating his parental rights. As any contrary argument would be frivolous, we allow appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2     Respondent, Quincy G., appeals the circuit court's May 7, 2024, order terminating his parental rights to Quinton G. and Liam G. His appointed appellate counsel concludes that there is no issue that could support an appeal. Accordingly, he has filed a motion to withdraw as counsel, along with a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of this motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal and counsel's motion

1

and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4     This case began when the State filed petitions alleging that each minor was abused and neglected in that their parents, respondent and Jodi G., used methamphetamine in the presence of the minors. At a subsequent hearing, the parents stipulated that the minors were abused due to the parents' methamphetamine use.

¶ 5     The initial service plan described the circumstances under which the minors were taken into protective custody. The document recounted that the caseworker responded to a 911 call from Jodi's home. Respondent and two unnamed associates were leading the children out of the apartment, with respondent claiming that Jodi "went crazy" and threatened to throw the children off the balcony. Jodi, however, claimed that she and respondent were arguing on the balcony and respondent threatened to jump off. Both parents admitted to smoking methamphetamine in the children's presence the night before the incident. The apartment was in disarray and Jodi had a black eye.

¶ 6     Subsequent service plans called for respondent to participate in mental-health and substance-abuse treatment, and to undergo drug testing. According to reports, respondent participated in an outpatient substance-abuse program for approximately three days in April 2022, before deciding that inpatient treatment would be better. He entered such a program but left against medical advice. Respondent failed to appear for four drug screens. Three other drug screens were positive for methamphetamines and either amphetamines or marijuana.

¶ 7     Throughout 2022 and 2023, respondent continued to test positive for drugs. He was diagnosed with major depressive disorder and entered a treatment facility but left against medical

2

advice. He attended some domestic-violence group sessions. He enrolled in a parenting class but cancelled three sessions.

¶ 8     Ultimately, on February 5, 2024, the State filed petition to terminate both parents' parental rights. The petition concerning respondent alleged that he had failed to make reasonable progress toward the children's return during any nine-month period between May 1, 2023, and January 31, 2024.

¶ 9     At the termination hearing, the family's caseworker, Shelby Wendell of Caritas Family Solutions, testified that respondent had been discharged from substance-abuse and mental-health treatment. She recounted his history of missed and failed drug tests. Respondent visited with the children, but according to Wendell, his multiple sclerosis made it difficult for him to interact with them. Wendell opined that, overall, respondent had not made reasonable progress toward the children's return. The circuit court found respondent unfit for failing to make reasonable progress.

¶ 10    The cause proceeded immediately to a best-interests hearing. Wendell testified that the children, who were twins, had been in a traditional foster home since December 2021. They shared a room that was "more than adequate." The boys were bonded to their foster parents, who were committed to adopting them. The boys interacted with other foster children in the home as well as the foster parents' extended family. Wendell opined that the children's best interests would be served by terminating the parental rights of both parents.

¶ 11    The circuit court found it in the best interest of the minors to terminate respondent's parental rights concerning the minor children and ordered the respondent's parental rights terminated on May 7, 2024. Respondent timely appealed.

¶ 12                                    ANALYSIS

¶ 13    Appellate counsel concludes that there is no reasonably meritorious argument that the circuit court erred in terminating respondent's parental rights. A proceeding to terminate a party's parental rights under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) occurs in two stages. *In re Deandre D*., 405 Ill. App. 3d 945, 952 (2010). First, the State must establish that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T*., 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2022). At the unfitness hearing, the State bears the burden of proving, by clear and convincing evidence, that the parent is unfit. See *In re D.W*., 214 Ill. 2d 289, 315 (2005).

¶ 14    Here, while respondent complied with some service plan tasks such as completing domestic-violence counseling, he failed to complete most substantive tasks. He was discharged from both substance-abuse and mental-health programs and continued to either miss drug tests or test positive. Given the circumstances under which the children came into care, respondent's inability to complete substance-abuse counseling and to remain drug-free was clearly a critical issue. Accordingly, the evidence supported the circuit court's conclusion that respondent had failed to make reasonable progress.

¶ 15    Counsel further concludes that there is no reasonably meritorious basis to challenge the circuit court's finding that terminating respondent's parental rights was in the children's best interests. Once a parent is found unfit, the circuit court moves on to the second stage of termination proceedings, which involves a determination of whether it is in the minor's best interest to terminate parental rights. At this stage, the State must demonstrate, by a preponderance of the evidence, that the termination is in the minor's best interest. *In re D.T*., 212 Ill. 2d at 366-67.

4

¶ 16 Wendell testified that the children were doing well in their foster home. They were bonded to the foster parents, who wanted to adopt them. They interacted with the other foster children and the foster parents' extended family. Thus, the circuit court's conclusion that the children's best interests required terminating respondent's parental rights was supported by the evidence.

¶ 17 Finally, counsel finds no good-faith argument that trial counsel was ineffective. Respondents in abuse and neglect cases have a right to the effective assistance of counsel as defined by *Strickland v. Washington*, 466 U.S. 668 (1984). *In re Kr. K.*, 258 Ill. App. 3d 270, 280 (1994). Under *Strickland*, a respondent must show that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for those errors, the outcome of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 687).

¶ 18 Counsel is unable to identify any specific errors by trial counsel but concludes that, even if such errors were made, given the strength of the evidence as noted above, the outcome of the proceeding would not likely have been different. We agree.

¶ 19 CONCLUSION

¶ 20 As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 21 Motion granted; judgment affirmed.